IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| ASSURANCE COMPANY OF AMERICA, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Civil Action No. 10-0117-CV-C |
| ADMIRAL INSURANCE COMPANY and SCOTTSDALE INSURANCE COMPANY, | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the court on the motion for summary judgment filed by defendant, Admiral Insurance Company ("Admiral") (Doc. 26). For the reasons set forth herein, the motion is due to be **GRANTED.**

**Facts and Procedural History**

Plaintiff, Assurance Company of America ("Assurance"), and defendants, Admiral and Scottsdale Insurance Company ("Scottsdale"), all issued general liability policies to Byrd Homes, Inc. ("Byrd Homes"), each for different coverage periods. Assurance covered Byrd from May 11, 1997, to May 11, 1999. Scottsdale issued a policy for the period May 11, 1999, to October 13, 1999. Finally, Admiral's policy covered Byrd from October 13, 1999, to October 13, 2000.

In 1997, Byrd Homes, as general contractor, constructed a home for Lester Welch ("Welch"). The contract for construction was signed on March 21, 1997. Construction was completed and the parties closed in October of that year.

At some point one to two years after completion of construction, Welch began noticing problems with his home. He then began attempts to contact Byrd Homes. It took Welch five or six calls over a year or year and a half to make contact. Collie Byrd of Byrd homes made two or three visits to the home, and finally told Welch that Byrd would take no corrective action because the one-year contractor's warranty had expired on the home.

Admiral was notified of a claim by Welch against Byrd Homes on September 11, 2002. Admiral sent a reservation of rights letter to Byrd Homes dated October 2, 2002. (Doc. 28-5). That letter acknowledged receipt of a claim by Byrd Homes and noted that a lawsuit had not been yet been filed against Byrd Homes. Admiral then requested that, in the event suit was filed, Byrd Homes promptly forward it a copy. Admiral also advised that it would be investigating the claim "subject to a reservation of our rights to dispute and/or deny coverage . . . ," and had hired a company to investigate Welch's claims.

There followed, in December 2002 and February 2003, correspondence between Admiral's investigator and counsel for Welch concerning the claim. The investigator's December 2, 2002, letter noted that Assurance had retained an adjuster in connection with the claim. The letter also advised that Welch had apparently been directed by his counsel not to discuss his claim. Finally, the letter

2

asks for a copy of a report from a structural engineer that had apparently been prepared which dealt with damages and scope of repairs for the Welch home. The Admiral file contains no response to this letter, nor any engineering report. The February 20, 2003, correspondence from Welch's counsel threatened litigation if the claim was not resolved in seven days. Also in February 2003, Admiral was informed by its investigator that another insurance carrier had settled Welch's claim. Admiral closed its file on the matter in May 2004 when it had no further contact from Welch or Byrd Homes.

Welch filed suit against Byrd Homes on April 13, 2003, in Clarke County, Alabama, Circuit Court. In that suit, Welch alleged causes of action for breach of contract, breach of the implied warranties of fitness and habitability, and fraudulent misrepresentation. The defects in the home alleged in the complaint included water damage to the floors, improper preparation of the lot, improper construction of the structural support system, and improper carpet installation. Assurance assumed the defense of Byrd Homes.

Assurance claims that the next correspondence received by Admiral in connection with this claim was a letter dated September 22, 2006, from a case manager for Assurance. The letter noted that Assurance had been defending the claim since September 2002, and demanded that Admiral and Scottsdale participate in the defense and indemnity of Byrd. While there is no explicit reference to the

lawsuit filed by Welch against Byrd in April 2003,[1] that a lawsuit was pending certainly may be inferred from the tone of the letter and the reference to "pleadings" in the last sentence. Admiral states that this letter was not found in their claim file for this matter, but admits that it was correctly addressed to one of its employees.

On the day of trial, August 5, 2008, the Welch lawsuit was settled. The settlement was finalized on September 10, 2008, and involved the payment of the sum of $650,000.00 from Assurance. Over a year later, on October 5, 2009, counsel for Assurance submitted a letter to Admiral advising it of the settlement. The letter also advised that Assurance incurred $82,738.00 in defense costs and expenses, for which it requested reimbursement from Admiral. There has been no correspondence or evidence of correspondence produced indicating that Admiral was advised of pending settlement negotiations or that its consent was sought prior to settlement. It appears that the first indication of a settlement received by Admiral and Scottsdale was the October 5, 2009, letter.

Assurance filed the instant lawsuit in Clarke County, Alabama, Circuit Court on February 8, 2010 (Doc. 1), and it was removed to this court by defendants Admiral and Scottsdale on March 9, 2010. (Id.). The complaint consists of a single count for breach of contract. Assurance, claiming to be the subrogee of Byrd Homes, alleges that Admiral breached its insurance policy with Byrd Homes. Assurance

---

[1] The letter does mention that Admiral and Scottsdale were placed on notice of a lawsuit in September 2002, but that clearly refers to the notice of the claim as the lawsuit was not filed until seven months later.

seeks recovery from Admiral for amounts it paid to defend and indemnify Byrd Homes in the lawsuit arising from the construction of Welch's home.

## Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Where the burden of proof at trial is on the non-moving party, the movant can meet the summary judgment standard by submitting affirmative evidence

negating an essential element of the non-movant's claim, or by demonstrating that the non-moving party's evidence itself is insufficient to establish an essential element of his claim. Id. at 1437-1438; Celotex, 477 U.S. at 322.

The burden then shifts to the non-moving party to make a showing sufficient to establish the existence of all essential elements to his claims, and on which he bears the burden of proof at trial. Id. To meet this burden, the non-moving party cannot rest on the pleadings, but must by affidavit or other appropriate means, set forth specific facts showing there is a genuine issue for trial. Id. at 324, 106 S.Ct. at 2553. A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. Where the parties' factual statements conflict or inferences are required, the court will construe the facts in the light most favorable to the nonmovant. Barnes v. Southwest Forest Industries, 814 F.2d 607, 609 (11th Cir. 1987).

## Legal Analysis

Admiral submits a number of arguments in support of summary judgment. However, the court finds it necessary to address only the issues of voluntary payment and lack of notice, as they are dispositive of the entire action.

### A. Voluntary Payment

Admiral claims that the payment of the settlement amount in the underlying case was a voluntary act and, as such, renders any subrogation claim by Assurance moot. The court agrees.

Admiral cites the case of Allstate Ins. Co. v. Amerisure Ins. Co., 603 So.2d 961 (Ala. 1992), in support of its argument. In Allstate, an employee of a construction company, was involved in an auto accident resulting in personal injuries to the occupant of another vehicle. Id. at 962. The injured party sued both the employee and his employer. Id. Allstate, who insured the employee, then filed a declaratory judgment action against Amerisure, the employer's insurer. Id. Allstate obtained a summary judgment holding that it owed no coverage to the employee for the accident. Id. Amerisure appealed the summary judgment, but while its appeal was pending, settled the personal injury case. Id. After settlement, the summary judgment in the declaratory judgment action was reversed on appeal, with a finding that Allstate did have coverage. Id. Amerisure then filed a counterclaim against Allstate claiming that it was entitled to reimbursement from Allstate for the settlement of the personal injury case. Id. at 962-963.

On appeal from a summary judgment in favor of Amerisure, the Alabama Supreme Court reversed, finding that Amerisure's payment of the settlement amount was a voluntary act for which it could not seek either indemnity or equitable subrogation from Allstate. Id. at 965 and 966. The court noted that Amerisure gave notice of the settlement to Allstate, but did not provide notice that it would attempt to hold Allstate liable for the amount of the settlement. The court found that while Amerisure properly settled the personal injury suit, it failed to preserve its right to proceed against Allstate either by giving Allstate notice of such an intent to do so or by postponing the settlement until after the court ruled on the

7

declaratory judgment appeal. Id. at 965. The Allstate court also found that, with respect to an equitable subrogation cause of action, Amerisure was subject to the term of the Allstate policy which prohibited voluntary payments by the policyholder. Id. at 966.

Also relevant is Mt. Airy Ins. Co. v. Doe Law Firm, 668 So.2d 534 (Ala. 1995). In that case, the Doe law firm represented an accident victim and failed to timely refile a complaint that had previously been dismissed. Id. at 535. As a result, a judgment in favor of the accident victim was overturned on appeal. Id. The firm placed Mt. Airy, its malpractice carrier on notice of a potential claim. Id. In response, Mt. Airy filed a declaratory judgment action in federal court, seeking a declaration that there was no coverage for the claim. Id. at 535-536. Thereafter, the accident victim offered to settle with the firm. Id. at 536. The firm advised Mt. Airy of the offer, indicated its consent to it and demanded that the carrier pay the settlement amount, less the firm's deductible. Id. Mt. Airy agreed to pay, but demanded an agreement from the firm indicating that payment of the settlement amount would not be a waiver of the right of the carrier to seek reimbursement from the firm if it prevailed in the declaratory judgment action. Id. The firm refused the nonwaiver agreement, but Mt. Airy paid the settlement amount anyway, and amended its declaratory judgment action to include a declaration that it was entitled to reimbursement from the Doe firm for the settlement amount. Id. The law firm moved for a summary judgment on the reimbursement count. Id. The

8

federal court certified to the Alabama Supreme Court the question of whether the carrier's payment was voluntary and precluded reimbursement. Id.

The Alabama Supreme Court, in deciding the Mt. Airy case, noted first that the case did not involve subrogation, because the money paid by Mt. Airy "is not paid to compensate the firm for an injury caused by a third party; the policy benefits were paid to the Doe law firm to settle a third party's claim against the firm" Id. at 537. Accordingly it was "clear that the doctrine of subrogation is not applicable . . . ." Id. The effect of this finding was that certain avenues of recovery of a prior payment were not available to the carrier. Id. at 536-537.

The Mt. Airy court went on to analyze the circumstances of the carrier's payment. It found the fact that Mt. Airy provided notice to the law firm that it disputed the claim and intended to file a legal action to recover it did not render the payment involuntary. Id. at 538 (citing National Bank of Boaz v. Marshall County, 157 So. 444, 446 (Ala. 1934) (the mere fact that the payment was paid under protest will not render it involuntary)). The court also found that the threat of bad faith litigation was also not sufficient to characterize the payment as involuntary. Id. (Alabama law recognizes that the mere threat of legal proceedings is insufficient to constitute the duress needed to make the payment of money involuntary.) The Mt. Airy court found the settlement payment to be voluntary and, thus, that the insurer was not entitled to seek reimbursement from the law firm.

In the instant case, it is undisputed that Admiral was not notified in advance that Assurance would be settling the Welch lawsuit against Byrd Homes. The first

9

notice that Admiral did, in fact, receive came more than a year after settlement was consumated. It is clear that Admiral was not provided an opportunity to participate in settlement negotiations, nor was it given an opportunity to consent to the settlement itself. It is also clear that Admiral was not advised prior to settlement that Assurance would look to it for reimbursement or subrogation as to any settlement payment. There is also no indication that Assurance sought a declaration that Admiral's policy provided coverage for the claim, nor that it sought any stay of proceedings in the underlying case to pursue any action with respect to Admiral. Finally, it is noteworthy that Assurance had over a month from the initial settlement of the underlying case until that settlement was finalized. Yet during that time, there was apparently no attempt by Assurance to get Admiral involved in any way. Under all of these circumstances, the court finds, as a matter of law, that Assurance's payment of the settlement was voluntary, and that it is not entitled to reimbursement from Admiral.[2]

In response to Admiral's argument, Assurance claims, for the first time, that its action is one for contribution rather than subrogation. According to Assurance, this renders <u>Allstate</u> and <u>Mt. Airy</u> inapplicable. Assurance explicitly labeled its suit as one based in subrogation. No mention is made in the complaint of a right to contribution. Assurance has not sought leave to amend its complaint, and cannot now seek to do so in response to a summary judgment motion. <u>Gilmour v. Gates,</u>

---

[2] Because of this holding, the court need not reach the issue of whether, under <u>Mt. Airy</u>, Assurance can even bring a subrogation action.

McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (a plaintiff may not amend its complaint through argument in a brief opposing summary judgment).

The determination of a voluntary payment is supported by the terms of the Admiral policy itself. Assurance, in its capacity as subrogee of Byrd Homes, steps into the shoes of Byrd Homes and is subject to all policy defenses applicable to that insured. Allstate Ins. Co. v. Amerisure Ins. Cos., 603 So.2d 961, 966 (Ala. 1992). According to the Admiral policy " [n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." (Doc. 27-3, p. 14). There is no disputing the fact that Admiral's consent was not sought by Byrd Homes or Assurance before settling the Welch lawsuit, thus making the subsequent payment a voluntary one for which Admiral bears no liability.

### B. Notice

In addition, the Admiral policy contains requirements regarding notice:

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

\* \* \*

2. Duties In The Event Of Occurrence, Offense, Claim or Suit

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.

   \* \* \*

   b. If a claim is made or "suit" is brought against any insured you must:

   \* \* \*

   (2) Notify us as soon as practicable

> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c.    You and any other involved insured must:

> (1)    Immediately send us copies of any demands, notices summonses or legal papers received in connection with the claim or "suit";

> \* \* \*

> (3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit";

(Doc. 27-3, p. 14).

Here, it is undisputed that, while Admiral was placed on notice of a claim in September 2002, this was before the underlying lawsuit was filed by Welch. That suit was filed in February 2003, but, even accepting Assurance's version of the facts, Admiral's first notice of the pendency of the suit came in September 2006, more than three years after it was filed. This is a clear breach of Byrd Homes' obligation to timely notify Admiral of the filing of a lawsuit. The next notice received by Admiral was that the case had settled, and this notice came more than a year after the actual settlement. This is both a breach of the insured's obligation to forward copies of all legal papers to Admiral as well the prohibition against making voluntary payments without Admiral's consent.

The Admiral policy at issue required that Byrd Homes notify Admiral "as soon as practicable" of a suit against it, provide Admiral written notice "as soon as practicable," and "immediately" forward any demands, notices, summonses or legal papers received in connection with the lawsuit. Notice requirements in insurance policies such as "as soon as practicable" have been interpreted in Alabama to mean

12

that an insured must give notice within a reasonable time under the circumstances of the case. Alabama Plating Co. v. United States Fid. & Guar. Co., 690 So.2d 331, 338 (Ala. 1996) (citing CIE Serv. Corp v. Smith, 460 So.2d 1244 (Ala. 1984)). To determine whether any delay in giving notice of an occurrence is reasonable, a court must consider the length of the delay and any reasons for the delay. Id. Mitigating evidence offered by the insured can create a question of fact as to whether the notice was reasonable. Id. (citing Watson v. Ala. Farm Bureau Mut. Cas. Ins. Co., 465 So.2d 394 (Ala. 1985)).

In this case, Byrd Homes was placed on notice of a potential claim against it sometime in 1998 or 1999, when Welch made contact with Collie Byrd about the water damage to the floor around the French doors. Admiral did not receive notice of a claim until September 2002. More importantly, suit was filed against Byrd Homes in April 2003. Admiral's first notice that suit had been filed against its insured was provided in September 2006, well over three years from the filing of the lawsuit. Assurance has had plenty of opportunity to submit competent evidence to the court that additional notice had been provided to Admiral. Assurance has been either unwilling or unable to do so, so the court must presume that such evidence does not exist, and that earlier notice was, in fact, not given.[3]

The only excuse offered by Assurance, on behalf of Byrd Homes, is Byrd Homes' subjective belief that it was not liable because any defects occurred outside

---

[3] In its response to Admiral's summary judgment motion, "Assurance asserts that Admiral also had notice of the suit, but ignored suit." Assurance's assertion is meaningless because there is absolutely no factual basis provided for it.

13

the one-year contractor's warranty period. This reason may arguably justify a delay in notifying Admiral of the initial claim, however it has no validity when it comes to the over three-year delay between the filing of the lawsuit and the first notice to Admiral of the suit. Whether or not Byrd Homes believed it had any liability is irrelevant once an actual suit is filed, especially where, as here, the insurer has a duty to defend the insured as well as to indemnify it for any losses.

Finally, the failure to provide reasonable or timely notice to an insurer relieves the insurer of the obligations imposed by the insurance policy, including the duty to defend the insured. Watts v. Preferred Risk Mut. Ins. Co., 423 So.2d 171, 173 (Ala. 1982).[4] The purpose of these notice provisions is to afford the insured an opportunity to control the litigation. Id. Admiral never had an opportunity to control the litigation once the lawsuit was filed, nor was it given an opportunity to participate in the settlement process. Therefore, Admiral had no obligation to defend the Welch lawsuit. See Id.

## Conclusion

In summary, the court finds that the settlement payment made to conclude the Welch lawsuit was a voluntary payment which relieves Admiral of any responsibility therefore. In addition, Admiral is also entitled to relief from payment responsibility due to the insured's breach of the policy provisions governing notice to the insurer. Admiral, therefore is relieved of any obligation to defend or indemnify

---

[4] The policy at issue in Watts is an auto liability policy, but its reasoning applies with equal force to a commercial general liability policy.

14

Byrd Homes.  By extension, Admiral has no liability to Assurance, as Byrd's subrogee.  Accordingly, Admiral's motion for summary judgment (Doc. 26) is **GRANTED.**

**DONE** and **ORDERED** this 18th day of May, 2011.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE