# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| ASSURANCE COMPANY OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 10-0117-CG-C ) |
| ADMIRAL INSURANCE COMPANY and SCOTTSDALE INSURANCE COMPANY, | ) ) ) ) ) |
| Defendants. | ) |

## ORDER

This matter comes before the court on the motion for summary judgment filed by defendant, Scottsdale Insurance Company ("Scottsdale") (Doc. 30). For the reasons set forth herein, the motion is due to be **GRANTED.**

## Facts and Procedural History

Plaintiff, Assurance Company of America ("Assurance"), and defendants, Scottsdale and Admiral Insurance Company ("Admiral"), all issued general liability policies to Byrd Homes, Inc. ("Byrd Homes"), each for different coverage periods. Assurance covered Byrd from May 11, 1992, to May 11, 1999. Scottsdale issued a policy for the period May 11, 1999, to October 13, 1999. Finally, Admiral's policy covered Byrd from October 13, 1999, to October 13, 2000.

In 1997, Byrd Homes, as general contractor, built a home for Lester Welch ("Welch"). The contract for construction was signed on March 21, 1997. Construction was completed and the parties closed in October of that year.

At some point one to two years after completion of construction, Welch began noticing problems with his home. He then began attempts to contact Byrd Homes. It took Welch five or six calls over a year or year and a half to make contact. Collie Byrd, owner of Byrd homes, made two or three visits to the home, and finally told Welch that Byrd Homes would take no corrective action because the one-year contractor's warranty had expired on the home.

Scottsdale was notified of a claim by Welch against Byrd on September 27, 2002. Scottsdale responded on October 29, 2002, and stated that it "will directly defend you or will contribute and share in the cost of defending you with any and all appropriate insurance carriers in this matter." (Doc. 30-8, p.1). The agreement to defend was made subject to a reservation of rights. Scottsdale specifically reserved its "right to withdraw the defense at any time in the event that it is determined there is no coverage." (Doc. 30-8, p. 13).

Welch filed suit against Byrd Homes on April 13, 2003, in Clarke County, Alabama, Circuit Court. In that suit, Welch alleged causes of action for breach of contract, breach of the implied warranties of fitness and habitability, and fraudulent misrepresentation. The defects in the home alleged in the complaint included water damage to the floors, improper preparation of the lot, improper

2

construction of the structural support system and improper carpet installation. Assurance assumed the defense of Byrd Homes.

On May 12, 2003, Scottsdale sent a letter to Byrd Homes which referenced the complaint number of the Welch lawsuit. (Doc. 30-10). In the letter, Scottsdale states that it had determined that there was no coverage under its policies. This denial of coverage was based on the policy definitions of "occurrence" and "property damage." Nevertheless, Scottsdale did say that it would provide a courtesy defense to Byrd Homes, and identified the attorney and law firm which had been assigned. However, upon learning that Assurance had assumed the defense of Byrd Homes, Scottsdale no longer provided courtesy counsel. Assurance alleges that on September 22, 2006, it sent correspondence to Scottsdale requesting that the insurer provide coverage benefits to Byrd Homes. Scottsdale denies receipt of this letter.

On the day of trial, August 5, 2008, the Welch lawsuit was settled. The settlement was finalized on September 10, 2008, and involved the payment of the sum of $650,000.00 from Assurance to Welch.

Assurance filed the instant lawsuit in the Circuit Court of Clarke County, Alabama, on February 8, 2010 (Doc. 1), and it was removed to this court by Admiral and Scottsdale on March 9, 2010. (Id.). The complaint consists of a single count for breach of contract. Assurance, claiming to be the subrogee of Byrd Homes, alleges that Scottsdale breached its insurance policy by failing to defend and indemnify Byrd Homes. Assurance seeks recovery from Scottsdale for amounts it paid to

defend and indemnify Byrd Homes in the lawsuit arising from the construction of Welch's home.

## Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Where the burden of proof at trial is on the non-moving party, the movant can meet the summary judgment standard by submitting affirmative evidence

negating an essential element of the non-movant's claim, or by demonstrating that the non-moving party's evidence itself is insufficient to establish an essential element of his claim. Id. at 1437-1438; Celotex, 477 U.S. at 322.

The burden then shifts to the non-moving party to make a showing sufficient to establish the existence of all essential elements to his claims, and on which he bears the burden of proof at trial. Id. To meet this burden, the non-moving party cannot rest on the pleadings, but must by affidavit or other appropriate means, set forth specific facts showing there is a genuine issue for trial. Id. at 324, 106 S.Ct. at 2553. A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. Where the parties' factual statements conflict or inferences are required, the court will construe the facts in the light most favorable to the nonmovant. Barnes v. Southwest Forest Industries, 814 F.2d 607, 609 (11th Cir.1987).

**Legal Analysis**

Under Alabama law, which governs this case, the insured, in this case Assurance, bears the burden of establishing coverage by demonstrating that a claim falls within the insurance policy. Jordan v. National Accident Ins. Underwriters, Inc., 922 F.2d 732, 735 (11th Cir. 1991) (citing Colonial Life & Accident Ins. Co. v. Collins, 194 So.2d 532, 535 (Ala. 1967)), The insurer, Scottsdale, bears the burden of proving the applicability of any policy exclusions. Universal Underwriters Ins. Co. v. Stokes Chevrolet, 990 F.2d 598, 605 (11th Cir. 1993) (citing United States

Fid. & Guar. Co. v. Armstrong, 479 So.2d 1164, 1168 (Ala. 1985)); see also Jordan, 922 F.2d at 735.

## A. Whether Assurance is a Subrogee of Byrd

Scottsdale claims that Assurance is not a proper subrogee of Byrd, and therefore has no right to pursue claims against it. "Subrogation" is an equitable doctrine intended to prevent the insured from recovering twice for a single injury and to reimburse the insurer for payments it made that should in fairness be borne by another. International Underwriters/Brokers, Inc. v. Liao, 548 So.2d 163, 164 (Ala. 1989). In Alabama, subrogation is not a matter of strict right but is an equitable principle that is dependent on the particular facts of a case. Zeigler v. Blount Brothers Construction Co., 364 So.2d 1163 (Ala. 1978). The theory behind the principle is to prevent the unjust enrichment of one party at the expense of another through contribution. Smith v. Alabama Medicaid Agency, 461 So.2d 817, 819 (Ala. Civ. App. 1984). "The legal principal of subrogation is a fluid concept depending upon the particular facts and circumstances and based on natural justice of placing the burden of bearing a loss where it ought to be, without the form of a rigid rule of law." 16 Couch on Insurance 3d § 222:24.

Scottsdale quotes from a 1998 case from a California appeals court in an attempt to support its position. The quoted portion states that an insured who has recovered the full amount of his loss cannot recover against insurers who have not contributed to the recovery of that loss, and the corollary proposition that those insurers who have not contributed have no remaining liability to the insured.

6

Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal.App. 4th 1279, 1295 (Cal. App. 1st Dist. 1998). However, the cited passage is found in a discussion about equitable contribution as distinguished from equitable subrogation, and is immediately followed by the statement that those non-contributing insurers "remain liable, however, for contribution to those insurers who have already paid on the loss or for the insured's defense." Id. The passage quoted by Scottsdale clearly has nothing to do with a subrogation cause of action.

The Fireman's Fund case does, however, contain a discussion of equitable subrogation and lists the elements of that cause of action:

> The essential elements of an insurer's cause of action for equitable subrogation are as follows: (a) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (b) the claimed loss was one for which the insurer was not primarily liable; (c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (e) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured.

Id. at 1292. It is clear from this description that Fireman's Fund cannot stand for the proposition advanced by Scottsdale that a cause of action for equitable subrogation is extinguished by the payment of the claim by the insurer.

7

### B. Whether there was coverage under the Scottsdale Policy

As the alleged subrogee of Byrd Homes, Assurance steps into the shoes of Byrd Homes and is subject to all of the policy defenses that would be available to Scottsdale in an action by Byrd Homes. Allstate Ins. Co. v. Amerisure Ins. Cos., 603 So.2d 961, 966 (Ala. 1992). Accordingly, Scottsdale claims that it cannot be liable for a breach of contract because there was no coverage under the terms of its policy with Byrd Homes. Assurance has the burden of proving that there was coverage under the policy. Scottsdale must prove whether any policy exclusions apply.

### 1. Whether there was an "occurrence"

Scottsdale claims that there was not an "occurrence" as defined in the policy. In order for there to be coverage, the Scottsdale policy requires that property damage be caused by an "occurrence." Occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 30-3, p. 25).

Scottsdale asserts that damages to the work of Byrd Homes caused by faulty workmanship is not an "occurrence" under the policy, and cites the case of United States Fid. & Guar. Corp. v. Warwick Dev. Co., 446 So.2d 1021 (Ala. 1984), in support. Warwick, like the instant case, involved an underlying lawsuit against a builder alleging unworkmanlike construction and misrepresentations of material facts. Id. at 1022. The insurance policy at issue contained the identical definition of "occurrence" as the policy at issue here. Id. at 1023. The insurer claimed, inter alia, that there was no occurrence which would trigger coverage. Id. The Warwick

court specifically held that the homeowners' reliance upon the misrepresentations made by the builder did not constitute an "occurrence" under the policy. The decision in Warwick however makes no mention of the claim for unworkmanlike construction.

Similarly, in the declaratory judgment action of Hermitage Ins. Co. v. Champion, 2010 WL 1711049 (M.D. Ala. April 27, 2010), the underlying case was one in which homeowners sued their homebuilder, alleging various causes of action including fraudulent misrepresentation. Id at *4. The insurance policy at issue was a commercial general liability policy which contained an identical definition of "occurrence" as the policies in Warwick and the instant case. Id. at *2. The Champion court held that fraudulent misrepresentation was not an "occurrence" and was therefore not covered by the policy. Id. at *4-*5. Noting that the policy was clearly designed to protect the insured from liability for accidental injury to another person or property damage to another's possessions, the court stated that "the policy would be stretched beyond its reasonable interpretation if the alleged fraud were found to be an 'occurrence.'" Id. at *5.

Accordingly, the court finds that in the instant case there is no coverage under the Scottsdale policy for count three of the underlying complaint which alleged fraudulent misrepresentation. Fraudulent misrepresentation cannot be considered an "occurrence" involving accidental injury or property damage.

9

## 2. Whether there was an "occurrence" within the Policy Period

Scottsdale next argues that if there has been an "occurrence" as defined by its policy, it did not occur within the policy period. Scottsdale essentially states that the evidence is undisputed that any "occurrence" that led to damages to Welch took place either before May 11, 1999, or after October 13, 1999. Under Alabama law, as a general rule, the time of an "occurrence" of an accident within the meaning of an indemnity policy is not the time the wrongful act is committed but the time the complaining party was actually damaged. American States Ins. Co. v. Martin, 662 So.2d 245, 250 (Ala. 1995) (citing Warwick, 446 So.2d at 1024).

Based on the evidence submitted by the parties, the court finds that Scottsdale has not met its summary judgment obligation on this issue. There are clearly questions of fact as to when Welch was actually damaged with respect to the defects listed in his complaint in the underlying lawsuit. As an example, there is a clear dispute as to when any actual damage from any settlement of the house occurred. There is also a dispute about when the water damage around the French doors was first manifested. According to Welch's "rough guess," it was between October 1998 and October 1999. On the other hand, one of the expert witnesses in the Welch lawsuit testified that, judging by the nature and extent of the damage, such damage must have begun to occur within one year of completion of the house. There are simply no definitive dates from which a conclusion about a date of occurrence can be drawn. For the remainder of the alleged defects, there is no evidence of record about any date of occurrence.

The evidence submitted does not negate Assurance's claim that Welch's damages could have occurred during defendant's policy period. In addition, Assurance has provided evidence supporting its claim that the damages occurred during the policy period. There thus remains a question of fact as to when Welch was actually damaged. Welch testified that he first noticed damage in the area of his back door sometime between one year and two years after his home was completed. This would mean Welch was damaged, and there was an occurrence, as defined by the Scottsdale policy, between May 1999 and October 1999. Thus the court cannot exclude the defendant from coverage obligation based on the occurrence requirement.

### C. Whether Policy Exclusions Apply

### 1. Whether the Work Product Exclusion Applies

Scottsdale claims that it is not obligated to defend and indemnify Byrd due to the operation of the work product exclusions set forth in its policy. These policy provisions exclude coverage for:

> j.  Damage to Property
> "Property Damage" to:
> \* \* \*
> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations; or
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
> \* \* \*
> Paragraph (6) of the exclusion does not apply to "property damage" included in the "products-completed operations

> hazard."
>
> * * *
>
> l. Damage to Your Work
>
> > "Property damage" to "your work" arising out of it or any part of it and included within the "products completed operations hazard."
> >
> > This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(Doc. 30-3, p. 17).

On its face, exclusion j(5) does not apply, since neither Byrd nor any subcontractors were performing any operations when Welch suffered his damages. Exclusion j(6) would be directly applicable because the damages claimed by Welch involve the repair, restoration or replacement of property allegedly caused by the incorrect performance of work by Byrd. However j(6) does not apply to property damage that is included in the "products completed operations hazard," which is defined as including "damage which occurs away from premises you (the insured) own or rent and arising out of "your product" or "your work." Finally, exclusion l purports to exclude from coverage property damage included within the products completed operations hazard. This exclusion is not applicable if the damaged work or the work out of which the damage arises was performed on the insured's behalf by a subcontractor.

There is at least a question of fact as to what construction work was performed directly by Byrd and what was performed by subcontractors and others. Auto-Owners Ins. Co. v. L. Thomas Dev., Inc., 2010 WL 2308190 (M.D. Ala. June 9,

12

2010), cited by Scottsdale as an example of the application of the work product exclusion, actually supports Assurance's position. While the court in Auto-Owners found that there was no insurance coverage for the damages in that case, the decision indicates that the insured contractor built the foundation at issue, rather than through a subcontractor. Id. at *4. The Auto-Owners court noted that its finding was "in line with a pervasive legal understanding of general-liability insurance, the purpose of which is to protect the insured against accidents, unforeseen disasters, and the misfeasance of others, such as sub-contractors; it is not intended to make the insurance company a guarantor of the insured's work." Id. In the instant case, the facts before the court do not permit a finding that the work that led to the damages alleged by Welch was performed solely by Byrd and not by a subcontractor.

## 2. Whether the Subsidence Exclusion Applies

Scottsdale also argues that the subsidence exclusion in its policy applies to deny coverage in this case. This provision excludes coverage for

> any claim of liability for Bodily Injury or Property Damage caused by, resulting from, attributable or contributed to, or aggravated by the subsidence of land as a result of landslide, mudflow, earth sinking or shifting, resulting from operations of the named insured or any subcontractor of the named insured.

(Doc. 30-3, p. 32). Scottsdale's argument is based upon the use of the words "settling" and "settlement" by various experts in the Welch lawsuit. Scottsdale apparently conflates settlement with subsidence. It is clear from the materials provided to the court that those witnesses who discuss settlement do not equate it

13

with subsidence of land. The evidence submitted for the court's consideration indicates that while the Welch house has in fact settled, the settlement is more likely caused by improper construction of the foundation itself rather that the subsidence of land under the foundation. In any event, Scottsdale has not carried its burden of demonstrating the absence of any question of fact on this issue.

### 3. Whether the Contractual Liability Exclusion Applies

Scottsdale also claims that policy coverage is excluded by its contractual liability exclusion. This policy provision states that there is no insurance coverage for "'[b]odily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." (Doc. 30-3, p. 14). Scottsdale thus argues that it would have no liability for the breach of contract claim asserted by Welch in the first cause of action in his lawsuit against Byrd Homes, Inc. (Doc. 30-9).

In <u>United States Fid. & Guar. Co. v. Nat'l Tank and Mach. Works, Inc.</u>, 402 So.2d 925 (Ala. 1981), the Alabama Supreme Court recognized the applicability of a similar contractual liability exclusion in a comprehensive general liability policy.[1] In that case, the insured was a swimming pool supplier who entered into a subcontract to provide lifehooks to a swimming pool contractor who was building a city pool. <u>Id.</u> at 926. Subsequently, an individual drowned when a lifehook came apart during a rescue attempt. <u>Id.</u> The decedent's administratrix brought suit

---

[1] The policy provision in <u>Nat'l Tank</u> excluded coverage for "liability assumed by the Insured under any contract or agreement."

14

against the supplier and the contractor claiming, inter alia, that the wrong type of lifehook was provided and that this constituted negligent or wanton conduct which resulted in the drowning. Id. at 927. While the court in Nat'l Tank determined that the underlying complaint at issue alleged a tort rather than a contract cause of action, the court necessarily recognized that the policy provision would operate to exclude a contract cause of action from coverage. Id. at 927. [2]

Carter v. Cincinnati Ins. Co., 435 So.2d 42 (Ala. 1983), involved a declaratory judgment action in which one count of the underlying complaint alleged a breach of an implied contractual duty to furnish the plaintiff with a safe place in which to live. Id. at 45. The insurance policy at issue contained a contractual liability exclusion identical to the one in Nat'l Tank. Id. The court, citing its decision in Nat'l Tank, held that the count fell "squarely within the clear and unambiguous provisions of the exclusionary terms of the insurance policy." Id.

Applying the foregoing law to this case, the court finds that count one of the underlying Welch complaint, which alleges breach of contract, falls squarely with the contractual liability exclusion of the Scottsdale policy because it plainly arises from the assumption of liability in a contract. Carter, 435 So.2d at 45; Champion, 2010 WL 1711049 at *3. Therefore, there is no coverage under the policy for count one.

---

[2] In Nat'l Tank, there was no contractual relationship between National Tank and the decedent.

15

This leaves count two of the underlying complaint, which is a cause of action for breach of the implied warranty of fitness and habitability. Implied warranties are terms that are implied by law in a contract and would not exist apart from that contract. See, e.g. Ala. Code 1975 § 7-2-314 ("a warranty that the goods shall be merchantable is implied in a contract for their sale….") Actions for their breach therefore sound in contract as opposed to tort. The implied warranty at issue here would not exist were it not for the construction contract between Byrd Homes and Welch. American Nat'l Prop. & Cas. Co. v. Blocker, 165 F.Supp.2d 1288, 1299 (S.D. Ala. 2001). Coverage for count two is therefore also excluded by operation of the contractual liability exclusion of the Scottsdale policy. See Blocker, 165 F.Supp.2d at 1299 (contractual liability exclusion provision in homeowners' liability policy precluded coverage for express and implied warranty claims.)

**Conclusion**

Based on the foregoing, the court finds that there is no coverage provided by the Scottsdale policy for the claims set forth in the underlying lawsuit brought by Welch against Byrd Homes. Counts one and two are contract claims and are thus excluded by the contractual liability exclusion of the insurance policy issued by Scottsdale to Byrd Homes as they both arise out of liability assumed in a contract. Coverage for count three, alleging fraudulent misrepresentation, is precluded because Welch's reliance on alleged misrepresentations of Byrd Homes cannot constitute an "occurrence" as defined in the policy. Because there is no coverage for the complaint, Byrd Homes had no cause of action against Scottsdale for claims

16

related to the insurance policy. Therefore, Assurance has no right to subrogation against Scottsdale. Accordingly, Scottsdale's motion for summary judgment is **GRANTED.**

**DONE** and **ORDERED** this 18th day of May, 2011.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE